UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAUL G.,<br><br>        Plaintiff,<br><br>    v.<br><br>MONTEREY PENINSULA UNIFIED SCHOOL DISTRICT, et al.,<br><br>        Defendants. | Case No. 16-cv-05582-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART** |

Severely impacted by his autism, Plaintiff Paul G. ("Paul") requires placement in a residential treatment facility that specializes in educating autistic students aged 18 to 22, which was not available in his home state of California. First Am. Compl. ("FAC") ¶¶ 15, 28, ECF 25. As a result, Plaintiff Paul G. brings this suit against the Monterey Peninsula Unified School District and California Department of Education, alleging various claims for relief. Paul asks this Court to compel the California Department of Education ("CDE") to ensure that residential treatment facilities for qualifying special education students age 18 to 22 are available in California, and where a local school district cannot provide such residential placement, that CDE step in to do so. FAC ¶¶ 98, 99. Paul also seeks monetary relief. *Id.* ¶¶ 95-97. Before the Court is CDE's motion to dismiss Paul's FAC. Mot., ECF 28. After reviewing the papers filed in conjunction with the motion and holding oral argument on April 13, 2017, the Court GRANTS CDE's motion to dismiss for reasons stated below.

**I. BACKGROUND**

According to the FAC, the facts are as follows. Plaintiff Paul G. is a nineteen-year-old special education student on the autism spectrum who has been a California resident since birth. FAC ¶¶ 12, 13. Severely impacted by his autism and thus conserved by his parents, Paul has

difficulty communicating and interacting with others and can engage in destructive behaviors at times. *Id.* ¶¶ 14-17. Paul attended the 2014-2015 school year in the eleventh grade at Marina High School located within the Monterey Peninsula Unified School District ("District"). *Id.* ¶¶ 5, 18. However, the District did not offer Paul an intensive applied behavior analysis program ("ABA"), which has been endorsed by the American Academy of Pediatrics and the National Research Counsel as the most effective form of treatment for autism. *Id.* ¶¶ 16, 20. Paul's behaviors worsened throughout the school year and the District eventually placed him on home hospital instruction in February 2015. *Id.* ¶¶ 20-26. On July 14, 2015, Paul was brought to a public library to receive home hospital instruction but the home hospital teacher was not adequately trained to work with Paul. *Id.* ¶¶ 20-26. In one instance, when the teacher told Paul to "be quiet," the situation escalated and triggered Paul to elope from the library and to run to his father's car. *Id.* ¶¶ 33-34. In the process of running from the library, Paul knocked an elderly lady to the ground causing injury. *Id.* ¶ 35. Because of this incident, Paul was charged with three felonies and was not allowed to leave the State of California pending resolution of his criminal charges. *Id.* ¶ 36.

On July 20, 2015, during an Individualized Education Plan ("IEP") meeting, the District offered Paul placement in a residential treatment facility, which was, as Paul alleges, what he should have received in lieu of home hospital in the first place. *Id.* ¶¶ 28, 37. However, because Paul was eighteen years old, there was no placement in the entire State of California that would accept him. *Id.* ¶ 37. In September 2015, the District invited the CDE to Paul's IEP meeting but the CDE did not participate in the meeting. *Id.* ¶ 38.

On August 25, 2015, a due process hearing was requested on behalf of Paul with the Office of Administrative Hearings. *Id.* ¶ 31. The due process complaint, which was filed and served on the District, the CDE, and the Department of Social Services ("DSS"), alleged that the CDE and the District had denied Paul a free and appropriate public education ("FAPE") by failing to ensure that an appropriate in-state residential treatment facility was available to students eighteen to twenty-two years of age, such as Paul. *Id.* On September 23, 2015, the OAH dismissed the complaint against CDE and DSS because the relief requested was "beyond the jurisdiction of the

1  OAH in a due process case." *Id.* ¶ 52. In January 2016, the District and Paul's parents settled past
2  claims under the Individuals with Disabilities Education Act ("IDEA"), excluding from settlement
3  any tort, negligence, or civil rights claim. *Id.* ¶ 53.

In accordance with the settlement, on February 23, 2016, Paul was placed in a residential treatment facility in Kansas. *Id.* ¶ 54. According to Paul, however, he requires a residential placement close to his family and the community in which he will live upon exiting special education. *Id.* ¶¶ 55, 60.

Paul filed this suit on September 30, 2016, against the District and CDE. ECF 1. The first amended complaint alleges two causes of action against the District and three causes of action against the CDE: (1) violation of § 504 of the Rehabilitation Act of 1973 against the District; (2) violation of the Americans with Disabilities Act against the District; (3) violation of § 504 of the Rehabilitation Act of 1973 against the CDE; (4) violation of the Americans with Disabilities Act against the CDE; and (5) violation of the IDEA and California Education Code § 56342 against the CDE. FAC ¶¶ 64-94. The District answered the first amended complaint but the CDE moves to dismiss it. Answr., ECF 27; Mot.

## II. LEGAL STANDARD

### A. Fed. R. Civ. Proc. 12(b)(1) and Standing

Article III of the U.S. Constitution's "case and controversy" requirement obligates federal courts to determine, as an initial matter, whether plaintiffs have standing to bring suit. *Lance v. Coffman*, 549 U.S. 437, 439 (2007). At the pleading stage, to satisfy the standing requirement plaintiffs must allege: (1) that they have suffered an "injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged conduct; and (3) that the injury will likely be redressed by a favorable decision. *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992). The party seeking to invoke federal court jurisdiction has the burden of establishing standing. *See Lujan*, 504 U.S. at 561. The Ninth Circuit has emphasized that "[t]he jurisdictional question of standing precedes, and does not require, analysis of the merits." *Maya v. Centex Corp.*, 658 F.3d

3

1060, 1068 (9th Cir. 2011) (citation and internal quotation marks omitted).

**B.     Fed. R. Civ. Proc. 12(b)(6)**

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**C.     The Individuals with Disabilities Education Act ("IDEA")**

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.,* was enacted to ensure that children with disabilities have access to a FAPE that meets their unique needs. *Honig v. Doe*, 484 U.S. 305, 309 (1988). Each state that receives federal special education funding must ensure that local educational agencies ("LEA") are in compliance with the IDEA. *Id.* at 310-11; *Los Angeles Cty. Office of Educ. v. C.M.*, No. 10-4702, 2011 WL 1584314, at *3 (C.D. Cal. Apr. 22, 2011). A LEA is generally responsible for providing a FAPE to students with disabilities residing within its jurisdictional boundaries. *See* Cal. Educ. Code §§ 48200, 56028 (the residency statutes); *see also Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524-26 (9th Cir. 1994).

California Education Code § 56026.3 defines a LEA as a "school district, a county office of education, a nonprofit charter school participating as a member of a special education local plan area, or a special education local plan area." Cal. Educ. Code § 56026.3. In California, a county

office of education is responsible for direct provision of a free appropriate public education ("FAPE") except for services in State Special Schools for deaf and blind students. *Id.* §§ 59002, 59102.

To meet the requirements of the IDEA, LEAs must implement an "individualized educational program" ("IEP") for each special needs student and provide services directly to students. *Id.* § 56347; 20 U.S.C. § 1414(d); *see also Honig*, 484 U.S. at 311-12. Each state agency—in California, the CDE—is responsible for determining specific policies and procedures for compliance and for administering funds to the local agencies. *Id.* Pursuant to the IDEA, each state agency is ultimately responsible for providing services directly to students when the local education agencies are "unable to establish and maintain programs of free appropriate public education that meet the requirements" of the IDEA. 20 U.S.C. § 1413(g)(1)(B); *see also Honig,* 484 U.S. at 329 (holding that the state may be required to provide services directly to special education students when the local agency fails to do so).

The IDEA also requires participating states and local educational agencies to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE] . . . ." 20 U.S.C. § 1415(a). For example, whenever there is a proposal or refusal to initiate a change relating to the identification, evaluation or educational placement of a child, or the provision of a FAPE, parents "have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f).

### III. DISCUSSION

The CDE raises numerous grounds for dismissing the complaint, including lack of standing, failure to exhaust administrative remedies, and lack of a private right of action. Before turning to the merits of these arguments, the Court addresses the CDE's request for judicial notice.

#### A. Judicial Notice

The CDE has requested judicial notice of four documents, attached to the request as Exhibits 1 through 4: (1) August 25, 2015 Amended Special Education Due Process Complaint

5

Notice received by the CDE from Plaintiff; (2) OAH's Order Granting the CDE's Motion to Dismiss dated September 21, 2015; (3) January 27, 2016 letter from Plaintiff's counsel to OAH; and (4) OAH's Order of Case Dismissal, dated February 25, 2016. RJN, ECF 28-1.

Judicial notice is appropriate with respect to Exhibits 1 through 4 for the purpose of the motion to dismiss because they are records of an administrative agency. *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (court may take judicial notice of records and reports of state administrative bodies), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 (1991).

Paul has neither opposed the request for judicial notice nor disputed the authenticity of the documents. The request for judicial notice is GRANTED with respect to all the exhibits attached to the CDE's request.

### B. Paul Has Adequately Alleged Standing

As a preliminary matter, the Court addresses whether the FAC has sufficiently alleged standing. CDE argues that the complaint has not adequately alleged injury to constitute standing because there was no denial of a FAPE. Mot. 8. Paul disagrees and in support of his injury, underscores the allegations relating to CDE's failure to provide in-state residential treatment centers for him. Opp'n 4-5, ECF 34. The Court finds that the absence of in-state residential treatment facilities as alleged by Paul likely constitutes the requisite injury necessary to proceed against CDE. *Rivera v. Fremont Union High Sch. Dist.*, No. 12-05714-EJD, 2013 WL 4674831, at *2 (N.D. Cal. Aug. 30, 2013) (finding that the allegation of a denial of FAPE sufficient to support an injury to confer standing). CDE argues that OAH has not made a finding of injury or that the out-of-state placement is inappropriate. However, this argument is more relevant to the merits of the claims or the exhaustion requirement. An OAH finding is not necessary to plausibly allege injury for the purpose of standing. Accordingly, the Court finds that Paul has sufficiently alleged a cognizable injury to confer standing.

### A. Count V: Violation of the IDEA and California Education Code § 56342

Paul claims that CDE has failed to ensure there are any residential treatment facilities in the State of California for adult special education students, in violation of the IDEA. FAC ¶ 92.

Paul further claims that this failure of the CDE also violates California Education Code § 56342 because Paul was not placed in a center "as close as possible to [his] home." *Id.* ¶ 91 (citing 34 C.F.R. § 300.116(b)(3)).

CDE moves to dismiss the IDEA claims on several grounds: the claims are barred by the statute of limitations, Paul lacks a cognizable injury to confer standing, Paul fails to join the District and the DSS as required parties, Paul has failed to exhaust administrative remedies, Paul does not have a private right of action, and federal law does not mandate that CDE provides in-state residential placements. Mot. 8-21. Paul disputes that the claims should be dismissed on any of these grounds. Paul argues that there is no statute of limitations bar because the appeal deadline does not apply in a case where a full hearing had not occurred. Opp'n 2-4. Paul further contends that he has pled injury to confer standing, that the District and the DSS are not required parties, that an exhaustion of administrative remedies would be futile, that he has a private right of action, and that federal law mandates that CDE develop polices and procedure to ensure students have access to placements in the least restrictive setting. *Id.* at 7-17.

The Court first turns to whether the statute of limitations bars the asserted IDEA claims. Congress established formal procedures for resolving IDEA disputes, and also set forth the following time to appeal:

> Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A); *see also* Cal. Educ. Code § 56505(k).

> The party bringing the action shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation for bringing such action under this subchapter, in such time as the State law allows.

20 U.S.C. § 1415(i)(2)(B); *see also* Cal. Educ. Code § 56505(k).

As such, the IDEA imposes a 90-day statute of limitations for appealing an administrative decision, and California adopts this same 90-day time frame for such appeals. 20 U.S.C. §

1415(i)(2)(B); Cal. Educ. Code § 56505(k). Here, Paul's IDEA claims are barred by this statute of limitations. First, Paul does not contest that he failed to file this action within 90 days of OAH's dismissal of CDE as a party or even within 90 days of OAH's subsequent dismissal as to all parties. Paul filed the instant action on September 30, 2016 but OAH dismissed CDE from the due process hearing on September 21, 2015, finding that OAH has no jurisdiction to order the type of statewide policy changes sought by Paul. Order Granting CDE's Mot. to Dismiss 3, Ex. 2 to RJN. OAH also later dismissed all remaining parties on February 25, 2016 pursuant to a settlement agreement. Exs. 3, 4 to RJN. Calculating from September 21, 2015, the day OAH granted CDE's motion to dismiss, Paul then had ninety days to appeal it. But he chose not to do so. If the 90-day window were to be calculated from the dismissal of the whole case on February 2, 2016, the instant action would still be untimely.

Paul argues that 90-day statute of limitation period should not apply because the OAH did not rule on the issues raised in the due process complaint based on a due process hearing. Opp'n 2-3. However, the weight of authority does not support this argument. First, the statutes do not distinguish an OAH order granting a motion to dismiss from "findings and decision" that are subject to the 90-day statute of limitations set forth in 20 U.S.C. § 1415(i)(2)(B) and Cal. Educ. Code § 56505(k). The OAH order granting CDE's motion to dismiss is still a "decision" that "aggrieved" Paul and there is nothing in the statute suggesting that the order should not be subject to the limitations period for appeal, just like a decision subsequent to a full hearing. *See* 20 U.S.C. § 1415(i)(2)(B).

Second, at least one district court in the Ninth Circuit has held that the 90-day limitations period applied to an order of dismissal prior to a full hearing. *B.B. v. Tacoma Sch. Dist.*, No. 08-5512, 2009 WL 159204, at *3 (W.D. Wash. Jan. 22, 2009). In *B.B.*, the plaintiffs' due process hearing complaint was dismissed by the hearing officer on February 1, 2008 but the plaintiffs did not file their complaint with the court until August 21, 2008, over six months after the due process hearing complaint was dismissed. *Id.* The court concluded that the plaintiffs lost the right to bring a civil action in the district court. *Id. B.B.* is thus almost identical to the situation in this case and further bolsters this Court's conclusion that the statute imposing the 90-day limitations period

applies here.

Lastly, Paul's reliance on *Meridian Joint Sch. Dist. No. 2 v. D.A.* is misplaced. No. 11-00320, 2013 WL 3270424, at *4 (D. Idaho June 25, 2013). *Meridian Joint Sch. Dist.* concerned whether a plaintiff's claim for attorneys' fees was barred by the statute of limitations. *Id.* at *4. After analyzing 20 U.S.C. § 1415, the court concluded that "the 90-day limitations period applies only to appeals from due process hearings and not separate actions for attorneys' fees." *Id.* at *13. Accordingly, the holding in *Meridian Joint Sch. Dist.* is specific to claims for attorneys' fees and does not pertain to an OAH decision short of a full hearing.

Accordingly, the Court finds that the IDEA claims against CDE are barred by statute of limitations. Given that the IDEA claims against CDE are barred, the Court need not address CDE's other arguments in connection with the IDEA claims, such as whether IDEA provides a private right of action, whether IDEA mandates provision of in-state residential placement, whether CDE violated law under the IDEA, and whether District and DSS are required parties.

### B. Counts III and IV: Violation of § 504 of the Rehabilitation Act of 1973; and Violation of the Americans with Disabilities Act

Paul further claims that the CDE's failure to ensure there are any residential treatment facilities in the State of California for adult special education students violates § 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act ("ADA"). FAC ¶¶ 81, 88.

In its motion to dismiss the Rehabilitation Act and ADA claims, CDE reiterates the same grounds raised in support of its motion to dismiss the IDEA claims, including lack of standing, failure to exhaust administrative remedies, and failure to join the required parties. Mot. 8-21. CDE reasons that the ADA and the Rehabilitation Act claims fail for the same reasons as the IDEA claims because they are premised on the IDEA claims. In opposition, Paul makes the same arguments here as those in support of the IDEA claims. Opp'n 2-18. Paul further argues that the Rehabilitation Act and ADA claims are sufficiently supported by the allegation that he was denied in-state placement solely on the basis of his disability. *Id.* at 19.

#### i. Exhaustion of Administrative Process

The Court finds the exhaustion requirement to be dispositive and thus will first evaluate

whether this requirement applies. Before Paul can seek judicial review of his claims, Paul must exhaust the administrative process, including filing a complaint with the local or state agency, and attending to a "due process hearing" before an impartial hearing officer if these claims are in reality claims for denial of FAPE. 20 U.S.C. § 1415; *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 749 (2017). 20 U.S.C. § 1415(l) provides

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

To determine whether the claims sought by Paul under the Rehabilitation Act and ADA must be exhausted just like an IDEA claim, the Supreme Court in *Fry v. Napoleon Cmty. Sch.* directed the courts to "look to the substance, or gravamen, of the plaintiff's complaint." 137 S. Ct. at 752. In *Fry*, petitioner E.F. was a child with a severe form of cerebral palsy, who relied on Wonder, a goldendoodle service dog, to assist her with various life activities. *Id.* at 751. E.F.'s school opted for a human aid to provide E.F. with one-on-one support but forbade Wonder from accompanying E.F. to school. *Id.* The Frys filed suit against E.F.'s school district alleging violations of Rehabilitation Act and ADA, which the lower court dismissed. *Id.* at 752. The lower court held that the Frys failed to first exhaust their claims via the IDEA's administrative procedures prior to asserting them in a civil suit. *Id.* at 752. On appeal, the Supreme Court held that whether the exhaustion requirement applies "hinges on whether a lawsuit seeks relief from the denial of a free appropriate public education." *Id.* at 754. The Supreme Court further explained that a school's refusal to make an accommodation might injure a child unrelated to a FAPE, and a complaint seeking redress for other harms independent of any FAPE denial, is not subject to the exhaustion requirement. *Id.* at 754-55. *Fry* suggests the following hypothetical questions to determine "whether the gravamen of a complaint" concerns the denial of a FAPE: (1) could the

10

claim be brought if the alleged conduct occurred at a public facility that was *not* a school?; (2) "could an *adult* . . . have pressed essentially the same grievance?" *Id.* at 756 (emphasis in original). Furthermore, *Fry* noted that the history of the proceedings, such as a plaintiff's prior pursuit of a remedy through the IDEA's administrative process, "will often provide strong evidence that the substance" of the claim concerns the denial of a FAPE. *Id.* at 757.

Asking *Fry*'s hypothetical questions in Paul's case, as well as an examination of the history of the proceedings, clearly leads to the conclusion that Paul's Rehabilitation Act and ADA claims concern a denial of FAPE, and that the exhaustion requirement would apply. The answer to the first question posed by *Fry* is "no," because Paul's claims fail when transposed to a public facility that is not a school. The alleged failure to provide residential treatment centers applies solely in a school setting. As to the second question, there would also be no basis for an adult to demand an in-state residential treatment facility from the CDE. In fact, Paul admits that he is only "entitled to receive a free and appropriate public education until [he turns] twenty-two." FAC ¶ 43 (citing Cal. Ed. Code § 56026). Paul also has previously invoked an IDEA administrative proceeding to achieve this result so the history of the proceeding further supports the conclusion that his claims here involve a denial of FAPE. *See also Washington v. Calif. Dep't of Educ.*, No. 10-0186, 2010 WL 4157139, at *5 (E.D. Cal. Oct. 19, 2010) (dismissing a plaintiff's IDEA and Rehabilitation Act claims for lack of exhaustion and noting that "a necessary exploration of the issues was never accomplished" in the prior administrative action as OAH did not adjudicate the merits of plaintiff's claim due to a settlement agreement); *Pedraza v. Alameda Unified Sch. Dist.*, No. 05-04977, 2007 WL 949603, at *5 (N.D. Cal. Mar. 27, 2007) (holding that IDEA's exhaustion requirement "is *not* satisfied when parties enter into a mediated settlement agreement") (emphasis in original). As such, Paul's Rehabilitation Act and ADA claims are subject to the exhaustion requirement.

The Court next examines whether Paul's Rehabilitation Act and ADA claims qualify for an exception to exhaustion requirement. Opp'n 9-10. "Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record,

11

and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992). However, there are certain situations where the procedures set forth in 20 U.S.C. § 1415 need not be exhausted where resort to the administrative process would be either futile or inadequate. *Id.* The Ninth Circuit has recognized the following exceptions to the exhaustion requirement: "(1) it would be futile to use the due process procedures"; "(2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; and (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)." *Id.* at 1303-04 (citation omitted).

As to Paul's Rehabilitation Act and ADA claims, there is insufficient showing that it would be futile to pursue the due process procedures. Futility applies in the narrow circumstance, such as when the alleged "statutory violations [are] so serious and pervasive that basic statutory goals are threatened," as those discussed by the Ninth Circuit in *Hoeft*. *E.g.*, *id.* at 1304 (noting that it would be futile if the claims involved "[s]erious due process violations [having] the practical effect of denying the plaintiffs a forum for their grievances"). In contrast to the due process violations discussed in *Hoeft*, it appears from the allegations in the complaint that Paul's failure to pursue his Rehabilitation Act and ADA claims was entirely voluntary. *See generally* FAC; Ex. 1 to RJN. Specifically, Paul did not assert his Rehabilitation Act and ADA claims in his due process complaint filed with the OAH. Ex. 1 to RJN. Paul also eventually settled his IDEA claims with the District. The allegations in the complaint as well as the procedural history demonstrate no due process violations that denied Paul a forum for his Rehabilitation Act and ADA claims. Thus, those claims would not qualify for this exception.

Likewise, the case here also does not satisfy the condition where "an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." Paul's challenge to CDE's failure to provide in-state residential treatment facilities is a "technical question of educational policy and methodology," that is best addressed with a "preliminary administrative review before being addressed by the federal courts." *Hoeft*, 967 F.2d at 1306. Such alleged

failure involves decisions of eligibility and whether an in-state treatment program is necessary to Paul's educational needs. The Court is thus best served with the benefit of agency expertise and an administrative record, before determining whether the CDE's failure is contrary to law. *Id.* at 1308; *see also Washington*, 2010 WL 4157139, at *6 (noting "whether plaintiff is entitled to a residential program in California and, if so, which parties are responsible for affording her this relief, are "classic examples of the kind of technical questions of educational policy that should initially be resolved with the benefit of agency expertise and a fully developed administrative record").

Turning to the third and last exception, whether "it is improbable that adequate relief can be obtained by pursuing administrative remedies," the Court also finds that this exception does not apply. Paul argues that OAH has already determined that it lacks authority to provide the type of systemic relief Paul requests. Opp'n 10; Ex. 2 to RJN. Paul also contends that the Supreme Court in *Fry* has left this question unanswered – "whether exhaustion is required when the plaintiff complains of the denial of a FAPE, but the specific remedy she requests [] is not one that an IDEA hearing officer may award." 137 S. Ct. at 752 n.4. Paul then concludes that his claims qualify for this exception. Paul also avers that because the LEA cannot provide the type of systemic relief he requests, the CDE is obligated to directly provide the requested relief to Paul. 20 U.S.C. § 1413(g)(1)(B).

20 U.S.C. § 1413(g)(1) (B) provides:
> A State educational agency shall use the payments that would otherwise have been available to a local educational agency or to a State agency to provide special education and related services directly to children with disabilities residing in the area served by that local educational agency, or for whom that State agency is responsible, if the State educational agency determines that the local educational agency or State agency, as the case may be –
> . . .
> **(B)** is unable to establish and maintain programs of free appropriate public education that meet the requirements of subsection (a) . . . .

20 U.S.C. § 1413(1)(B).

The Court disagrees with Paul's contention that "it is improbable that adequate relief can be obtained by pursuing administrative remedies." Although OAH determined that it lacked

13

authority to provide the type of systemic relief Paul requests, 20 U.S.C. § 1413(1)(B) provides an avenue for CDE to step into LEA's role under such circumstances. However, prior to triggering the obligation to step into the District's shoes and "to provide special education and related services directly to children with disabilities," CDE must first determine that the District "is unable to establish and maintain programs of FAPE that meet the "least restrictive environment" standard or other requirements. 20 U.S.C. § 1413(1)(B). Without such a determination by OAH, CDE's obligation is not triggered.

*Rivera v. Fremont Union High Sch. Dist.* is instructive here. No. 12-05714-EJD, 2013 WL 4674831, at *1 (N.D. Cal. Aug. 30, 2013). Similar to Paul's claims, the plaintiff in *Rivera* filed a complaint with OAH against the school district and the CDE for failing to "develop residential placements for special education students aged 18 through 22 in California." *Id.* at *1. The OAH dismissed the complaint without a full hearing against the school district for lack of standing on behalf of the student and against the CDE for lack of jurisdiction. *Id.* The plaintiff then filed suit in federal court, appealing from the OAH decision. *Id.* Since the filing of the complaint in federal court, the student was placed in an out-of-state residential facility and stipulated to dismiss the school district with prejudice. *Id.* The court in *Rivera* dismissed the complaint for failing to exhaust the administrative remedies. *Id.* at *3. The court reasoned that without a finding by OAH that the student "was denied a FAPE, the court cannot order CDE to effectuate the systemic changes requested by Plaintiff." *Id.* at *2; *see also* 20 U.S.C. § 1415(i)(2)(C) (premising the court's ability to order appropriate relief based primarily on its review of the underlying administrative record). The court also recognized the "the compelling challenge plaintiffs in IDEA cases face in choosing between settling in order to place students as soon as possible and pursuing their claims with the hopes of ultimately securing the right to a more appropriate and/or desirable placement for each student." *Id.* at *3. Nonetheless, the court concluded that the plaintiff "has already made the difficult decision to settle and must bear the consequences that flow from it." *Id.*

Just like *Rivera*, there has been no determination in Paul's case that the District "is unable to establish and maintain programs of [FAPE]" that meet the "least restrictive environment"

14

standard or other requirements. *See* 20 U.S.C. § 1413(1)(B). Even though Paul alleges that an in-state residential treatment facility is required to provide FAPE in the "least restrictive environment," such claims have not been evaluated by OAH and are not substantiated with a hearing record. The Court agrees with the reasoning set forth in *Rivera*, that "an administrative due process hearing–not an action in the district court–is the appropriate forum for making [the] initial determinations" as to whether a FAPE was denied. 2013 WL 4674831, at *2; *see also Hoeft*, 967 F.2d at 1306 (noting that exhaustion applies when the case concerns "technical question of educational policy and methodology," that is best addressed with a "preliminary administrative review before being addressed by the federal courts"). If OAH makes a determination pursuant to a full hearing that Paul needs an in-state residential treatment facility, then CDE's obligations could be triggered under 20 U.S.C. § 1413(1)(B), assuming the District is unable to provide that FAPE. If OAH denies Paul's request, Paul could appeal the OAH decision to this Court. Accordingly, regardless of the outcome of the OAH decision, exhaustion is necessary to trigger CDE's obligation or to provide this Court a substantive hearing record for an appeal. Thus Paul's argument that "it is improbable that adequate relief can be obtained by pursuing administrative remedies," is unfounded.

The Court further recognizes that Paul made the difficult decision to settle with the District rather than proceed with a full OAH hearing, a decision that was also made by the plaintiff in *Rivera*. Nevertheless, this does not obviate the exhaustion requirement and similar to the reasoning set forth in *Rivera*, Paul "must bear the consequences that flow from [the decision to settle]." *Rivera*, 2013 WL 4674831, at *3; *see also Washington v. Cal. Dep't of Educ.*, No. 10-0186, 2010 WL 4157139, at *6 (E.D. Cal. Oct. 19, 2010) (finding that the claims subject to exhaustion and that despite a settlement agreement, an exception to the exhaustion requirement did not apply). Given that Paul's Rehabilitation Act and ADA claims are subject to the exhaustion requirement, those claims are dismissed for failing to exhaust the administrative remedies.

### ii. Remaining Grounds Raised by CDE

The remaining arguments raised by CDE are moot now that the Court has found that the IDEA claims are barred and that the derivative Rehabilitation Act and ADA claims must be

15

exhausted prior to judicial review.

Whether the Rehabilitation Act and ADA claims should be dismissed for Paul's failure to join the District and DSS is moot. For example, CDE argues that DSS is the state agency that licenses in-state residential facilities and must be joined to afford the requested relief. Given that the Rehabilitation Act and ADA claims concern a denial of FAPE and must be dismissed for failing to exhaust administrative remedies, the Court need not reach the issue of whether DSS and the District are required parties to these claims.

Lastly, CDE argues that Paul fails to allege the elements of a discrimination claim in support of the Rehabilitation Act and ADA causes of action. Mot. 22-24. Even assuming that the FAC adequately pleads a discrimination claim, the allegations in support of the Rehabilitation Act and ADA claims concern a denial of FAPE. Such claims concerning a denial of FAPE must be exhausted. Without exhaustion, these claims must still be dismissed regardless of whether the elements of a discrimination claim are met.

### C. Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052.

Here, having granted CDE's motion to dismiss the IDEA claims based on the statute of limitations, the Court finds that a leave to amend would be an exercise in futility. There is no set of facts that could overcome the statute of limitations so to allow Paul's IDEA claims to proceed. As discussed above, Paul's IDEA claims were filed in this suit past the 90-day limitations period. Paul's complaint and opposition to this motion proffer no additional facts or legal bases that could remedy this deficiency. Accordingly, there is no leave to amend the IDEA claims.

As to the Rehabilitation Act and ADA claims, the Court provides leave to amend these

16

claims to allege adequate facts to demonstrate that they would not be subject to the exhaustion requirement in accordance with the principles articulated in *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743 (2017). The Court acknowledges that the FAC was drafted before the Supreme Court issued its decision in *Fry*. As noted above, given that the allegations in support of these claims concern a denial of FAPE, the claims are subject to the exhaustion requirement. If Paul could allege Rehabilitation Act and ADA claims that do not concern a denial of FAPE, those claims might not be subject to the exhaustion requirement.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1) The CDE's motion to dismiss is GRANTED with respect to Count V based on the IDEA claims without leave to amend. This dismissal is without prejudice to Paul's right to reassert these claims in the event that there is a future IEP determination that results in a new OAH proceeding that concludes with a decision against Paul's claims.
2) The CDE's motion to dismiss is GRANTED as to Counts III and IV (§ 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act claims) with leave to amend; any amended complaint shall be filed on or before July 21, 2017;
3) Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal of Counts III and IV against CDE with prejudice.

Dated: June 21, 2017

BETH LABSON FREEMAN
United States District Judge