**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| PAUL G., | Case No. 16-cv-05582-BLF |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT CALIFORNIA DEPARTMENT OF EDUCATION'S MOTION TO DISMISS SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND** |
| MONTEREY PENINSULA UNIFIED SCHOOL DISTRICT, et al., | |
| Defendants. | [Re: ECF 55] |

Plaintiff Paul G. brings this suit against Defendants Monterey Peninsula Unified School District and California Department of Education based on their purported denial of educational services. Seeking injunctive relief, Paul asks this Court to require the California Department of Education ("CDE") to develop policies and procedures to ensure that residential treatment facilities for qualifying special education students age 18 to 22 are available in California. Second Am. Compl. ("SAC") ¶ 79, ECF 50. Paul also requests monetary damages. *Id.* ¶¶ 76–78. Before the Court is the CDE's motion to dismiss the SAC. Mot., ECF 55. Having considered the briefing and oral argument, as well as the governing law, the Court GRANTS the CDE's motion to dismiss the SAC without leave to amend for the reasons stated below.

## I. BACKGROUND

Paul is a special education student on the autism spectrum and has been conserved by his parents due to the severity of his needs.[1] SAC ¶¶ 14, 16. Paul's disability impacts him in many areas including academics, social/emotional functioning, speech and language, and daily living skills. *Id.* ¶ 14. For example, Paul will often "shut down, refuse to work, and engage in socially

---

[1] The SAC states that Paul is 19 years old. SAC ¶ 14. The CDE understands that Paul is now 20 years old. Mot. 6 n.1.

inappropriate behavior." *Id.* ¶ 17.

Paul attended the 2014-2015 school year in the eleventh grade at Marina High School located within the Monterey Peninsula Unified School District ("District"). SAC ¶ 20. Paul's father was routinely called to pick up Paul from school due to his behavior. *Id.* ¶ 21. Paul learned that he could escape non-preferred tasks such as doing school work or even being at school if he engaged in improper behavior such as assaulting staff, urinating his pants, and eloping from the classroom. *Id.* ¶ 22. Paul's behavior worsened and the District eventually placed him on home hospital instruction in February 2015. *Id.* ¶¶ 22, 28.

On July 14, 2015, Paul was brought to a public library to receive home hospital instruction. SAC ¶ 35. However, the home hospital teacher was not adequately trained to work with Paul. *Id.* After a short break, the teacher told Paul to "be quiet" and caused Paul to attempt to elope from the library and run to his father's car. *Id.* ¶ 36. As he attempted to run outside, Paul knocked an elderly lady to the ground causing injury. *Id.* ¶ 37. Due to this incident, Paul was charged with three felonies and was not permitted to leave California pending resolution of his criminal charges. *Id.* ¶ 38.

A few days later, on July 20, 2015, the District convened an Individualized Education Plan ("IEP") meeting and offered to place Paul in a residential treatment facility. SAC ¶ 39. However, because Paul was eighteen years old, there was no facility in California that would accept him. *Id.* In September 2015, the District invited the CDE to Paul's IEP meeting. *Id.* ¶ 40. But the CDE informed Paul and the District that the CDE would not participate in the IEP meeting. *Id.*

Paul requested a due process hearing with the Office of Administrative Hearings ("OAH") on August 25, 2015. SAC ¶ 33. In his due process complaint, Paul alleged that the CDE and the District had denied Paul a free and appropriate public education ("FAPE") by failing to ensure that an appropriate residential treatment facility was available to him. *Id.* Regarding the CDE, the complaint alleged that the CDE "failed to ensure [that] residential placements are available for students eighteen to twenty-two years of age" and as a result many developmentally delayed students are "swallowed up by the adult criminal system." *Id.*

The OAH dismissed the complaint against the CDE on the grounds that the relief requested

was "beyond the jurisdiction of the OAH in a due process case" and the OAH had no authority to order the "type of statewide policy changes Paul's parents sought on his behalf." SAC ¶ 50. In January 2016, the District and Paul's parents settled past claims under the Individuals with Disabilities Education Act ("IDEA") but excluded from the settlement "any tort claim, any negligent claim, and/or any civil rights claim." *Id.* ¶ 52.

About a month later, on February 23, 2016, Paul was placed at Lakemary Center, a residential treatment facility in Kansas. SAC ¶ 53. Since being in placement, Paul has become homesick. *Id.* ¶ 58. He has asked his parents to move to Kansas to be closer to him.[2] *Id.*

On September 30, 2016, Paul filed this action against the District and CDE. ECF 1. The Court granted the CDE's motion to dismiss the first amended complaint ("FAC"). ECF 46. Specifically, Paul's IDEA claims were dismissed without leave to amend as being barred by the statute of limitations. *Id.* Paul's claims based on § 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act were dismissed with leave to amend. *Id.*

Paul subsequently filed the operative SAC, asserting the following claims against the District and CDE: (1) violation of § 504 of the Rehabilitation Act of 1973, and (2) violation of Title II of the Americans with Disabilities Act. SAC ¶¶ 62–75. Regarding the CDE, the SAC alleges that the CDE has failed to develop policies or procedures to ensure that in-state residential placements are available for adult special education students. *Id.* ¶ 48. On this basis, the SAC pleads that the CDE has interfered with the students' rights to receive a FAPE in the least restrictive setting. *Id.* The SAC further alleges that, from about July 2015 to February 2016, Paul had no educational program consistent with his IEP because it required placement in a residential treatment center. *Id.* ¶ 51. According to Paul, his "[IEP]—which the Ninth Circuit has called a contract—could not be implemented." *Id.* As part of his relief, Paul seeks an injunction requiring the CDE to develop policies and procedures to ensure that in-state residential placements are available to adult special education students. *Id.* ¶ 79. The CDE now moves to dismiss the claims against it.

---

[2] During the hearing, Paul's counsel stated that Paul has moved back to California and is no longer placed at a residential treatment facility in accordance with his current IEP.

## II.    LEGAL STANDARD

### A.    Fed. R. Civ. Proc. 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B.    Judicial Notice

After briefing was closed, Paul submitted a request for judicial notice of two decisions, attached to the request as Exhibits 1 and 2: (1) Order Granting in Part and Denying in Part Mot. to Dismiss, *Student A., et al., v. Berkeley Unified Sch. Dist., et al.*, No. 17-cv-02510-JST, 2017 WL 4551514 (N.D. Cal. Oct. 12, 2017) and (2) Order Denying Mot. to Dismiss, *Abraham P. v. Los Angeles Unified Sch. Dist., et al.,* No. 2:17-cv-03105-GW, 2017 WL 4839071 (C.D. Cal. Oct. 5, 2017). RJN, ECF 60. The CDE opposes Paul's request for judicial notice on the grounds that Paul did not seek leave of the court to file additional material. Opp'n to RJN, ECF 61.

Although no additional papers may be filed without prior Court approval once a reply is submitted, a party may "bring to the Court's attention a relevant judicial opinion published after the date the opposition or reply was filed by filing and serving a Statement of Recent Decision." Civil L.R. 7-3(d)(2). The two decisions submitted by Paul were issued after the reply was filed.

As such, Paul's submission of the two decisions is deemed as a Statement of Recent Decisions. The Court, however, will not consider arguments contained in Paul's request. Civil L.R. 7-3(d)(2) (a party may file a Statement of Recent Decision without argument).

## C. Statutes

The following statues are relevant to the issues raised in the parties' briefing.

### i. The Individuals with Disabilities Education Act

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, was enacted to ensure that children with disabilities have access to a free and appropriate public education ("FAPE") that meets their unique needs. *Honig v. Doe*, 484 U.S. 305, 309 (1988). Each state that receives federal special education funding must ensure that local educational agencies ("LEA") are in compliance with the IDEA. *Id.* at 310–11. A LEA is generally responsible for providing a FAPE to students with disabilities residing within its jurisdictional boundaries. *See* Cal. Educ. Code §§ 48200, 56028 (the residency statutes). In California, a county office of education is responsible for direct provision of a FAPE except for services in State Special Schools for deaf and blind students. Cal. Educ. Code. §§ 59002, 59102.

LEAs must implement an "individualized educational program" ("IEP") for each special needs student and provide services directly to students. *Id.* § 56347; 20 U.S.C. § 1414(d); *see also Honig*, 484 U.S. at 311–12. Pursuant to the IDEA, each state agency—in California, the CDE—is ultimately responsible for providing services directly to students when the local education agencies are "unable to establish and maintain programs of free appropriate public education that meet the requirements" of the IDEA. 20 U.S.C. § 1413(g)(1)(B).

The IDEA provides formal procedures for resolving disputes. "[A] dissatisfied parent may file a complaint as to any matter concerning the provision of a FAPE with the local or state educational agency (as state law provides)." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 749 (2017) (citing 20 U.S.C. § 1415(b)(6)). The parents "have an opportunity for an impartial due process hearing, which [is] conducted by the State educational agency or by the local educational agency as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f). The IDEA sets forth an exhaustion requirement:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l). As such, a complainant is required to exhaust the administrative process, including filing a complaint with the local or state agency, and attending to a "due process hearing" before an impartial hearing officer if the asserted claims are in reality claims for denial of a FAPE. 20 U.S.C. § 1415; *Fry*, 137 S. Ct. at 749.

### ii. Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act

In addition to the IDEA, other federal statutes also protect students with disabilities. Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act ("ADA") "cover both adults and children with disabilities, in both public schools and other settings." *Fry*, 137 S. Ct. at 749. The ADA precludes a "public entity" from discriminating based on disability, and the Rehabilitation Act applies the same prohibition to any federally funded "program or activity." 42 U.S.C. §§ 12131–12132; 29 U.S.C. § 794(a).

Under Title II of the ADA, a public entity is required to make "reasonable modifications" to its "policies, practices, or procedures" when necessary to avoid discrimination. 28 C.F.R. § 35.130(b)(7). Similarly, § 504 of the Rehabilitation Act requires "certain 'reasonable' modifications to existing practices in order to 'accommodate' persons with disabilities." *Fry*, 137 S. Ct. at 749 (citing *Alexander v. Choate,* 469 U.S. 287, 299–300 (1985)). Both "statutes authorize individuals to seek redress for violations of their substantive guarantees by bringing suits for injunctive relief or money damages." *Id.* at 750 (citing 29 U.S.C. § 794a(a)(2); 42 U.S.C. § 12133).

## III. DISCUSSION

Paul claims that the CDE discriminated against Paul by failing to provide an appropriate education, including proper support, services, and placement, in violation of § 504 of the

Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act . *See* SAC ¶¶ 48–49, 65–68, 73–74. In particular, the SAC alleges that the CDE has failed to develop policies or procedures to ensure that in-state residential placements are available for adult special education students and has interfered with the students' rights to receive a FAPE. *Id.* ¶ 48.

As a preliminary issue, the CDE argues that the SAC contains only a minor amendment alleging that "an IEP 'is akin to a contract' and 'is a contract.'" Mot. 2 (citing SAC ¶¶ 11, 41, 51). According to the CDE, the Ninth Circuit has held that an IEP is not a contract. *Id.* Moreover, in the CDE's view, even if Paul's IEP was contractual in nature, that characterization does not change the fact that the SAC seeks relief premised on an underlying purported denial of a FAPE and that Paul has failed to exhaust his administrative remedies. *Id.* In this regard, the CDE contends that Paul's opposition cannot show how the SAC cures the deficiencies identified by the Court's prior order dismissing the FAC and thus Paul has filed an "improper motion for reconsideration." Reply 1, ECF 58. The CDE raises numerous grounds for dismissing Paul's claims, including failure to exhaust administrative remedies, failure to plausibly allege the elements of a discrimination claim, and failure to join a required party. Paul has filed an opposition arguing that he did exhaust his IDEA claims and now seeks redress under the ADA and § 504. In addition to allegations regarding the purported contractual nature of an IEP, the SAC contains other new allegations such as Paul had "no educational program consistent with his agreed upon [IEP]" from about July 2015 to February 2016 because the IEP "required placement in a residential treatment center." SAC ¶ 51.

The Court first addresses the CDE's challenge based on Paul's purported failure to exhaust administrative remedies because the exhaustion requirement is dispositive.

## A. Exhaustion of Administrative Process

The CDE asserts that Paul's § 504 and ADA claims are premised on a purported denial of a FAPE under the IDEA. Mot. 11. On this basis, the CDE argues that exhaustion is required because the gravamen of Paul's claims against the CDE is an alleged denial of a FAPE. *See id.* at 8–9, 12 (citing *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 752, 754–55, 757 (2017)). The CDE further contends that the SAC's allegation that an "IEP is a contract" is neither legally correct nor

changes the fact that Paul's claims are premised on a purported denial of a FAPE. *Id.* at 11–12. Thus, in the CDE's view, whether contract law applies or not is irrelevant. *Id.* at 12.

Paul disagrees with the CDE's conclusion that Paul is required to exhaust his IDEA administrative remedies to bring the § 504 and ADA claims. Opp'n 6. Specifically, Paul believes that the application of *Fry* does not lead to the conclusion that his claims seek relief for denial of a FAPE. *Id.* at 6–8. In Paul's view, he is not challenging the adequacy of his IEP but rather the "denial of his basic right to go to school." *Id.*

### i. The Gravamen of Paul's Claims against the CDE is a Denial of a FAPE

Here, the parties essentially dispute whether the gravamen of Paul's § 504 and ADA claims against the CDE is a denial of a FAPE under the IDEA. If the claims are, then Paul must exhaust the administrative process before he can seek judicial review of his claims. 20 U.S.C. § 1415; *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 749 (2017).

In *Fry*, the Supreme Court held that whether the IDEA's exhaustion requirement applies "hinges on whether a lawsuit seeks relief from the denial of a free appropriate public education." 137 S. Ct. at 754. As such, the Supreme Court directed the courts to "look to the substance, or gravamen, of the plaintiff's complaint" to determine whether the claims brought under § 504 of the Rehabilitation Act and ADA must be exhausted like an IDEA claim. *Id.* at 752. *Fry* suggested the following questions to determine "whether the gravamen of a complaint" concerns the denial of a FAPE: (1) could the claim be brought if the alleged conduct occurred at a public facility that was *not* a school?; (2) "could an *adult* . . . have pressed essentially the same grievance?" *Id.* at 756 (emphasis in original). "[W]hen the answer[s] [are] no, then the complaint probably does concern a FAPE, even if it does not explicitly say so." *Id.* at 756. *Fry* also noted that the history of the proceedings, such as a plaintiff's prior pursuit of a remedy through the IDEA's administrative process, "will often provide strong evidence that the substance" of the claim concerns the denial of a FAPE. *Id.* at 757.

Under *Fry*'s guidance, the Court applies the above questions to the allegations in Paul's SAC. As for the first question, the Court finds that the answer is "no" because Paul's allegations are based on his IEP and thus his claims fail in the context of a public facility that is not a school.

8

In particular, the alleged denial to provide an in-state residential treatment facility applies solely in a school setting. The answer to the second question is also negative because an adult cannot press allegations based on an IEP and demand an in-state residential treatment facility. As the SAC pleads, special education students "may receive a free and appropriate public education until they turn *twenty-two*." SAC ¶ 46 (citing Cal. Edu. Code § 56026) (emphasis added). Moreover, the fact that Paul has previously pursued an IDEA administrative proceeding based on identical or similar allegations supports the conclusion that his claims are premised on a denial of a FAPE. *See* Ex. 1 in Supp. of Mot. ("Paul's Due Process Compl."), ECF 55-1; *Fry*, 137 S. Ct. at 757 ("A further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings. In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute."). Accordingly, *Fry*'s inquiries as applied to this case show that the "gravamen" of Paul's § 504 and ADA claims is a denial of a FAPE. In fact, the SAC alleges that the CDE has interfered with special education students' rights to receive a FAPE. SAC ¶ 48.

Paul contends that *Fry*'s guidance "[does] not work [in Paul's case] because there is [an] overlap between the IDEA, [§] 504, and Title II." Opp'n 8. For support, Paul points out that *Fry* recognized that "[t]he same conduct might violate all three statutes." *Id.* (citing *Fry*, 137 S. Ct. at 756). Paul then argues that Justices Alito and Thomas criticized the use of the majority's hypothetical questions and consideration of the history of the proceedings when there is an "overlap" between the IDEA and other federal laws. *Id.* (citing *Fry*, 137 S. Ct. at 759 (Alito, J., concurring) (explaining that the majority's "clues" are "likely to confuse and lead courts astray"). The CDE counters that *Fry*'s concurring opinion is not the law. Reply 3.

The Court is unpersuaded by Paul's argument that *Fry* is not applicable to Paul's claims. The majority in *Fry* recognized and addressed the concurring Justices' concern. *See Fry*, 137 S. Ct. at 757 n.10. As the majority explained, the "point of the questions is not to show that a plaintiff faced with a particular set of circumstances could *only* have proceeded under Title II or § 504—or, alternatively, could *only* have proceeded under the IDEA." *Id.* Rather, the questions provide a useful guide to "determine whether a plaintiff who has chosen to bring a claim under

9

Title II or § 504 instead of the IDEA—and whose complaint makes no mention of a FAPE—nevertheless raises a claim whose *substance* is the denial of an appropriate education." *Id.* (emphasis in original). Here, the SAC asserts only § 504 and ADA claims and thus the Court may rely on *Fry*'s "clues" to determine whether the gravamen of Paul's claims is a denial of a FAPE. As discussed above, *Fry*'s hypothetical questions as applied to Paul's case, as well as an examination of the history of the proceedings, leads to the conclusion that the gravamen of Paul's § 504 and ADA claims is the denial of a FAPE. Thus, the exhaustion requirement applies.

### ii. Paul's Claims for Damages Are Subject to the Exhaustion Requirement

In the SAC, Paul seeks both injunctive relief and damages against the CDE. SAC ¶¶ 76–80. Paul argues that "monetary damages are not an available remedy under the IDEA" and thus exhaustion is not required. Opp'n 11. In Paul's view, his relief for damages is a remedy that an IDEA hearing officer may not award. *Id.* However, a plaintiff may not avoid the IDEA's exhaustion requirement through artful pleading or by merely limiting a prayer for relief to money damages. *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 877 (9th Cir. 2011) (en banc), *overruled in part on other grounds*, *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc). As explained below, the Court finds that the SAC's claims for damages are "premised on a violation of the IDEA" so that "the relief follows directly from the IDEA," and therefore those claims are subjection to the exhaustion requirement. *Id.* at 875, 882.

In *Fry*, the Supreme Court declined to reach the issue of whether exhaustion is required when a plaintiff seeks monetary damages. 137 S. Ct. at 752 ("[W]e leave for another day a further question about the meaning of § 1415(*l* ): Is exhaustion required when the plaintiff complains of the denial of a FAPE, but the specific remedy she requests—here, money damages for emotional distress—is not one that an IDEA hearing officer may award?"). Because the Supreme Court did not resolve the question, the Court looks to the Ninth Circuit's opinion on this issue. Specifically, the Court looks to *Payne v. Peninsula Sch. Dist.* in which the Ninth Circuit addressed whether the IDEA's exhaustion requirement applies when a plaintiff seeks damages. 653 F.3d 863 (9th Cir. 2011) (en banc). During the hearing, the parties disagreed on *Payne*'s application to this case.

In *Payne*, the Ninth Circuit held that the IDEA requires exhaustion in three situations.

First, exhaustion is required when a "plaintiff seeks an IDEA remedy or its functional equivalent." *Payne*, 653 F.3d at 875. For example, if a disabled student brings an ADA suit and "seeks damages for the costs of a private school education, the IDEA requires exhaustion." *Id.* Second, "the IDEA requires exhaustion in cases where a plaintiff seeks prospective injunctive relief to alter an IEP." *Id.* Third, exhaustion is required when a plaintiff seeks to enforce rights that arise as a result of a denial of a FAPE, even if the claim is based on a cause of action other than the IDEA. *Id.* Regarding the third situation, *Payne* held that if a claim for damages under § 504 of the Rehabilitation Act is "premised on a denial of a FAPE," "the relief follows directly from the IDEA and is therefore 'available under this subchapter.'" *Id.* (citing 20 U.S.C. § 1415(l)). The court further held that "to the extent that a request for money damages functions as a substitute for relief under the IDEA, a plaintiff cannot escape the exhaustion requirement simply by limiting her prayer for relief to such damages." *Id.* at 877. On the other hand, if "a plaintiff has laid out a plausible claim for damages unrelated to the deprivation of a FAPE, the IDEA does not require her to exhaust administrative remedies before seeking them in court." *Id.*

The Ninth Circuit in *Payne* provided an example on how to apply its holding. In that case, the plaintiff alleged violations of the Fourth, Eighth, and Fourteenth Amendments and sought "general, special, and punitive damages." *Payne*, 653 F.3d at 883. The court explained that the request for "general damages for extreme mental suffering and emotional distress" would not constitute a relief under the IDEA if such damages were intended to compensate the plaintiff for injuries resulting from the constitutional violations committed by school officials. *Id.* On the other hand, exhaustion would be required if the "emotional distress" stemmed from the plaintiff's concern that an adequate education was not provided. *Id.*

Under *Payne*'s guidance, the Court turns to the SAC's allegations. The SAC alleges that the CDE has failed to ensure that in-state residential treatment placements are available for special education students who are eighteen to twenty-two years of age and thereby interfered with the students' rights to receive a FAPE. SAC ¶ 49. Because Paul was eighteen years old when the District offered a place in a residential treatment as part of his IEP, "there was no placement in the entire State of California that would take him." *Id.* ¶ 39. According to the SAC, Paul became

increasingly isolated and unhappy during the time he was not in a residential program. *Id.* ¶ 56. The SAC further pleads that "Paul has suffered substantial educational and developmental losses, causing a permanent decline in his future development, which adversely affects his future earnings and earning potential, and which has resulted in humiliation, pain, suffering, damage to his social development and interpersonal relations." *Id.* ¶ 57. Paul also has been homesick after being placed in a residential treatment facility in Kansas. *Id.* ¶ 58. In the prayer for relief, Paul requests "[c]ompensatory damages for [his] injury, psychological and emotional distress." *Id.* ¶ 95.

Here, *Payne*'s first situation—when a plaintiff seeks "an IDEA remedy or its functional equivalent"—does not apply because Paul is not seeking damages as the cost for "counseling, tutoring, or private schooling." *Payne*, 653 F.3d at 875, 877. On the other hand, the Court finds that the third situation listed in *Payne* is applicable here. *Id.* at 875 (holding that exhaustion is required when a plaintiff's claim for damages is "premised on a denial of a FAPE"). The SAC's allegations show that Paul's harm—including educational and development losses, pain and damage to his social development, and emotional distress—stems from his purported deprivation of receiving a FAPE, in particular, for not being placed at an in-state residential treatment facility. *See* SAC ¶¶ 56–57. In other words, Paul's damages claims are "premised on a violation of the IDEA" and thus arise under the IDEA's "substantive standards." *Payne*, 653 F.3d at 875. As such, "the relief follows directly from the IDEA" and exhaustion is required. *Id.* at 875; *see also id.* at 883 (holding that exhaustion would be required if the "emotional distress" stemmed from the plaintiff's concern that an adequate education was not provided); *Cayla R. v. Morgan Hill Unified Sch. Dist.*, No. 5:10-CV-04312 EJD, 2012 WL 1038664, at *5 (N.D. Cal. Mar. 27, 2012) (requiring exhaustion where the student "lost the benefit of participating in the community and interacting with other students" and the claims stemmed from a denial of a FAPE); *C.R. v. Lodi Unified Sch. Dist.*, No. 216CV00062, 2016 WL 4474604, at *1, 3 (E.D. Cal. Aug. 25, 2016) (requiring exhaustion where the alleged conduct violated the IDEA and caused "severe emotional distress" to the student). Accordingly, the Court finds that the SAC's claims for damages stem from the purported denial of a FAPE and are subject to the exhaustion requirement.

Paul argues that *Payne* explains that "[i]f a plaintiff can identify a school district's

12

violation of federal laws other than the IDEA and can point to an authorized remedy for that violation unavailable under the IDEA, then there is no reason to require exhaustion under § 1415(l)." Opp'n 11 (citing *Payne*, 653 F.3d at 881). This statement does not change the above conclusion. In *Payne*, the Ninth Circuit was considering the situation where there is no remedy available "under the IDEA" for a non-IDEA violation. In such a situation, no claim is premised on a denial of a FAPE. In contrast, as explained above, Paul's alleged harm stems from a purported denial of a FAPE (i.e., an IDEA violation) and so "the relief follows directly from the IDEA." *Payne*, 653 F.3d at 875.

For the above reasons, the Court finds that Paul is required to exhaust his administrative remedies to bring the asserted damages claims under § 504 and the ADA.

### iii. Paul Did Not Exhaust His Administrative Remedies

Paul claims that he did exhaust administrative remedies to the extent possible. Opp'n 10. Paul asserts that he filed a due process complaint against the CDE but that the OAH dismissed the CDE on the grounds that it lacked jurisdiction over the CDE. *Id.* (citing Ex. 2 in Supp. of Mot. ("OAH's Order"), ECF 55-2). Paul argues that requiring exhaustion of the due process hearing procedure against the District does not make sense because Paul would not be able to enforce the OAH's decision against the CDE when the CDE is not a party to the administrative procedure. *Id.* at 10.

The Court disagrees with Paul's argument. "Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992). The OAH's finding that a student has been denied a FAPE may further lead to a determination whether the District is "unable to establish and maintain programs of [FAPE]" pursuant to 20 U.S.C. § 1413(g)(1)(B). Without such a determination, the CDE is not obligated to step into the District's shoes and "to provide special education and related services directly to children with disabilities." *See* 20 U.S.C. § 1413(g)(1)(B). In this case, the

CDE's obligation was not triggered because Paul settled his case with the District and dismissed his due process complaint. Ex. 3 in Supp. of Mot., ECF 55-3. The administrative proceeding before the OAH did not develop a factual record and resulted in no finding whether Paul has been denied a FAPE for the reason that he was not placed in an in-state residential treatment facility. Allowing the state agencies to exercise their expertise to fully explore technical educational issues and develop a complete factual record is the reason why the IDEA contains an exhaustion requirement. *Hoeft*, 967 F.2d at 1303. If Paul were permitted to seek relief from this Court without affording the state the opportunity to address Paul's case in the first instance, the result would eviscerate the very goal of the IDEA's exhaustion requirement. *Id.* ("The exhaustion requirement "embodies the notion that 'agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer.'" (internal quotation omitted)).

Other courts have reached similar conclusions. For example, in *Rivera v. Fremont Union High Sch. Dist.*, the plaintiff filed a complaint with the OAH against the school district and the CDE for failing to "develop residential placements for special education students aged 18 through 22 in California." No. 12-05714-EJD, 2013 WL 4674831, at *1 (N.D. Cal. Aug. 30, 2013). Without a full hearing, the OAH dismissed the complaint against the district for the plaintiff's lack of standing on behalf of the student and against the CDE for lack of jurisdiction. *Id.* The plaintiff then filed suit in federal court. *Id.* Subsequently, the student was placed in an out-of-state residential facility and stipulated to dismiss the district. *Id.* Against this backdrop, *Rivera* found that the administrative remedies were not exhausted without a finding by the OAH that the student "was denied a FAPE." *Id.*, at *2. The court reasoned that a resolution of the OAH's proceeding "on the merits" as to the student's FAPE was necessary for exhaustion. *Id.* ("The court simply cannot order [the] CDE to effect systemic change without at the very least a determination that the Student was denied a FAPE."); *see also* 20 U.S.C. § 1415(i)(2)(C) (premising the court's ability to order appropriate relief based primarily on its review of the underlying administrative record). Paul attempts to discount *Rivera* by arguing that the case was dismissed based on standing issues rather than a failure of exhaustion. Opp'n 9 n.1. However, as discussed above, the court in *Rivera*

14

makes clear that the resolution of the OAH's proceeding on the merits is necessary for exhaustion under the IDEA.

Similar to *Rivera*, the plaintiff in *Washington v. Cal. Dep't of Educ.* sought a residential program in California. No. 10-0186, 2010 WL 4157139, at *6 (E.D. Cal. Oct. 19, 2010). In that case, the plaintiff previously filed an administrative complaint with the OAH. *Id.*, at *5–6. However, the prior administrative action did not result in adjudication on the merits because the plaintiff entered into a settlement agreement. *Id.*, at *6. The court held that the plaintiff's claims were subject to exhaustion because "a necessary exploration of the issues was never accomplished" in the prior administrative action as the OAH did not adjudicate the merits of the plaintiff's claims due to the settlement. *Id.* Here, again Paul attempts to discount *Washington*. In doing so, he points out that the Ninth Circuit affirmed *Rivera* in a short unpublished decision while a dissent in the three judge panel disagreed. Opp'n 9. However, as the CDE points out (Reply 4), the dissent's opinion is not the law and the Court is not bound by it.

For the above reasons, the Court is not persuaded by Paul's arguments that he has exhausted administrative remedies before the OAH. If OAH makes a determination pursuant to a full hearing that Paul needs an in-state residential treatment facility, then the CDE's obligations could be triggered under 20 U.S.C. § 1413(g)(1)(B), assuming the District is unable to provide that FAPE. If the OAH denies Paul's request, Paul could appeal the OAH decision to this Court. As such, regardless of the outcome of the OAH decision, exhaustion is necessary to trigger the CDE's obligation or to provide this Court a substantive record for an appeal. Although Paul made the difficult decision to settle with the District rather than proceed with a full OAH hearing, that decision cannot obviate the exhaustion requirement. *Rivera*, 2013 WL 4674831, at *3 (the complainant "must bear the consequences that flow from [the decision to settle]"); *see also Washington*, 2010 WL 4157139, at *6.

### iv. Paul's Claims are Not Subject to Exceptions to the Exhaustion Requirement

Paul argues that there are exceptions to the exhaustion requirement and that his case falls under the exceptions. Opp'n 10–12. The IDEA's exhaustion requirement is not absolute for there are situations where exhaustion serves no purpose. *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d

1298, 1303 (9th Cir. 1992). The Ninth Circuit recognized the following exceptions to the exhaustion requirement: "(1) it would be futile to use the due process procedures"; "(2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; and (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)." *Id.* at 1303–04 (citation omitted). Here, the Court finds that the SAC does not contain allegations that support Paul's contention that his § 504 and ADA claims against the CDE fall under the exceptions.

Paul first asserts that it would be futile for him to proceed through a costly due process hearing because the OAH determined that it lacked authority to provide the relief sought by Paul. Opp'n 10–11. Futility applies in the narrow circumstance, such as when the alleged "statutory violations [are] so serious and pervasive that basic statutory goals are threatened." *Hoeft*, 967 F.2d at 1304 (explaining that it would be futile if the claims involved "[s]erious due process violations [having] the practical effect of denying the plaintiffs a forum for their grievances"). Here, Paul has not shown due process violations that practically deny him a forum for his grievance. As discussed above, Paul is able to seek his relief regarding the need for an in-state residential treatment facility by utilizing the IEP process to obtain an express requirement of in-state residential education. If such a request were denied then Paul could submit his complaint to the OAH. If the local school district or OAH makes a determination that Paul needs an in-state residential treatment facility and that the LEA is unable to provide that service, then the CDE's obligations could be triggered under 20 U.S.C. § 1413(g)(1)(B). If Paul's request is denied, he could appeal the OAH's decision to federal court where a decision could be made based on the developed factual record. This Court may not simply order the "CDE to effect systemic change without at the very least a determination" that Paul was denied a FAPE based on a need for an in-state residential placement. *Rivera*, 2013 WL 4674831, at *6. In fact, the Court's relief regarding a denial of a FAPE is premised on its review of the underlying administrative record. *Id.* (citing § 1415(i)(2)(C)). Accordingly, the Court is unpersuaded by Paul's argument that his claims fall under the futility exception.

This case also does not qualify for the exception where "an agency has adopted a policy or

pursued a practice of general applicability that is contrary to the law." This exception may apply when purely legal questions are involved. *See Hoeft*, 967 F.2d at 1305. However, "[s]tructuring a complaint as a challenge to policies, rather than as a challenge to an individualized education program formulated pursuant to these policies[] . . . does not suffice to establish entitlement to a waiver of the IDEA's exhaustion requirement." *Id.* at 1034. Here, Paul's challenge to the CDE's purported failure to provide in-state residential treatment facilities is a "technical question of educational policy and methodology" which involves decisions of eligibility and whether an in-state treatment program is necessary to the educational needs. *Id.* at 1306. Such decisions are best addressed with a "preliminary administrative review before being addressed by the federal courts." *Id.* As stated in the prior order dismissing the FAC, this Court is best served with the benefit of agency expertise and an administrative record, before determining whether the CDE's failure is contrary to law. *Id.* at 1308; *see also Washington*, 2010 WL 4157139, at *6 (noting "whether [the] plaintiff is entitled to a residential program in California and, if so, which parties are responsible for affording her this relief, are "classic examples of the kind of technical questions of educational policy that should initially be resolved with the benefit of agency expertise and a fully developed administrative record").

Paul appears to further argue that the third exception applies because he is seeking "a systemic change by asking that the CDE develop policy and procedure to ensure adult special education students have access to residential placements here in the [S]tate of California." Opp'n 11–12. Paul relies on the OAH's characterization of his relief as "systemic" in nature and the fact that the OAH stated that it had no authority to order such relief. *Id.* at 12 (citing OAH's Order 3). The Court is unpersuaded by Paul's argument for the same reasons discussed for the futility exception. Although the OAH determined that it lacked authority to provide the type of systemic relief Paul requests, 20 U.S.C. § 1413(g)(1)(B) provides an avenue for the CDE to step into the LEA's role under certain circumstances. As explained earlier, before the CDE's obligation is triggered, there must be a determination that the District "is unable to establish and maintain programs of [FAPE]." 20 U.S.C. § 1413(g)(1)(B). The OAH must first make a determination on the merits regarding Paul's need for an in-state residential treatment facility which the LEA fails

to accomplish. Only then will the CDE's obligations be triggered pursuant to § 1413(g)(1)(B). If the OAH denies Paul's request, he could appeal that denial to this Court. Without a determination that Paul was denied a FAPE, this Court may not simply order the "CDE to effect systemic change." *Rivera*, 2013 WL 4674831, at *6.

As a Statement of Recent Decision, Paul submitted *Student A., et al., v. Berkeley Unified Sch. Dist., et al*., No. 17-cv-02510-JST, 2017 WL 4551514 (N.D. Cal. Oct. 12, 2017). In *Berkeley Unified*, the plaintiffs brought a "systemic" claim alleging that the local school district and board of education failed to "put into effect policies, procedures, and programs that ensure . . . that all students with eligible conditions . . . are provided appropriate special education." 2017 WL 4551514, at *3–4. The court denied the defendants' motion to dismiss for failure to exhaust. *Id.*, at *5. *Berkeley Unified* is distinguishable because there the plaintiffs pled that they filed various compliant resolution process complaints ("CRPs") with the CDE. *Id.*, at *4. The court recognized that "CRPs can suffice for exhaustion purposes under several different circumstances." *Id.* (citation omitted). Unlike *Berkeley Unified*, Paul does not allege that he has filed a CRP with the CDE. In fact, Paul did not represent that he has done so when the Court inquired during oral argument. Therefore, the Court does not find that *Berkeley Unified* is applicable to this case.

As a final point, Paul argues that public policy and equitable considerations weigh against a rigid application of the IDEA's exhaustion requirement. Opp'n 12. First, Paul contends that the "purpose of the exhaustion requirement, to defer 'expert determinations' about the educational programs to the experts is not served in this case because there is no dispute about the educational program that Paul requires to receive a FAPE." *Id.* On this premise, Paul claims that the exhaustion requirement should not apply. *Id.* The Court, however, disagrees with that premise. Paul seeks relief regarding his alleged need for an in-state residential treatment facility. However, the SAC does not plead that Paul's IEP requires an in-state residential treatment facility. As such, it appears that there has been no expert determination on whether Paul needs the type of residential placement he seeks as a relief.

Second, Paul asserts that a finding that he failed to exhaust his administrative remedies because he settled his IDEA dispute with the District would set a precedent that "encourag[es]

litigation between students and school districts even when no dispute exists." Opp'n 12. The Court is unpersuaded by this argument. If there is no dispute, there is no reason why a student would engage in litigation. The student can always file a complaint with the OAH when an actual dispute arises. The Court does not find that any concern raised by Paul outweighs the IDEA's exhaustion rationale to allow "the exercise of discretion and educational expertise by state and local agencies" and to "promote[] judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Hoeft*, 967 F.2d at 1303.

### v. Conclusion

For the above reasons, the Court finds that Paul's § 504 and ADA claims against the CDE are subject to the IDEA's exhaustion requirement and that no exception applies. Those claims are dismissed for failing to exhaust the administrative remedies.

### B. The CDE's Remaining Grounds

As the Court has found that Paul's claims based on § 504 of the Rehabilitation Act and Title II of the ADA against the CDE must be exhausted prior to judicial review, the remaining arguments raised by the CDE are moot.

The CDE argues that Paul fails to allege the elements of a discrimination claim in support of the § 504 and ADA claims. Mot. 12–16. Such claims concerning a denial of a FAPE must be exhausted. Without exhaustion, these claims must still be dismissed regardless of whether the elements of a discrimination claim are met.

In addition, the CDE contends that the Department of Social Services ("DSS") is the state agency that licenses residential facilities and must be joined to the extent that Paul seeks changes that impact residential placement in California for adult students with disabilities. *Id.* at 16–17. Because Paul's claims based on § 504 and the ADA against the CDE must be dismissed for failure of exhaustion, the Court need not determine whether the DSS is a required party.

### C. Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the

Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052.

This Court has considered the factors set forth in *Foman*, and finds that there are sufficient justifications to deny leave to amend under the circumstances. This order constitutes the Court's second intensive inquiry into the sufficiency of the pleadings. When the Court dismissed the first amended complaint, it did so with leave to amend and advised Paul to allege adequate facts to demonstrate that his claims would not be subject to the exhaustion requirement in accordance with the principles articulated in *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743 (2017). However, the SAC's § 504 and ADA claims continue to concern a denial of a FAPE and are subject to the exhaustion requirement. Paul's SAC and opposition to this motion proffer no additional facts or legal bases that could remedy this deficiency. Paul's failure to cure the identified deficiency and lack of indication that he may be able to do so show that leave to amend would be futile.

Also importantly, the weightiest *Foman* factor, prejudice to the CDE, is implicated in this case. The CDE has now twice successfully dismissed the claims for failure to exhaust administrative remedies. The SAC's allegations are similar to the earlier dismissed FAC, and the CDE has argued similar issues that were present in its motion to dismiss the FAC. Requiring the CDE to continue to defend this lawsuit when Paul has not demonstrated or represented that he can successfully amend, constitutes undue prejudice. *Foman* makes clear that undue prejudice to the opposing party by virtue of allowance of the amendment can weigh against Rule 15's liberal standard. 371 U.S. at 182.

For these reasons, the Court finds that leave to amend the dismissed claims is not warranted.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the CDE's motion to dismiss is GRANTED as to Counts I and II (§ 504 of the Rehabilitation Act of 1973 and the Americans with

20

Disabilities Act claims) asserted against the CDE without leave to amend. This dismissal is without prejudice to Paul's right to reassert these claims in the event that there is a future IEP determination that results in a new OAH proceeding that concludes with a decision against Paul's claims. The District is now the only remaining defendant in this action.[3]

**IT IS SO ORDERED.**

Dated: June 8, 2018

BETH LABSON FREEMAN
United States District Judge

---

[3] The District and Paul stipulated that the District's Answer (ECF 27) to the FAC will serve as the operative Answer to the SAC. ECF 53.